LEO FEDUS AND SONS CONSTRUCTION COMPANY, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN AND BOROUGH OF COLCHESTER ET AL.
(10219)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

Argued January 9—decision released April 21, 1992

*Lewis K. Wise,* for the appellants (defendants).
*David F. Sherwood,* for the appellees (plaintiffs).

FREEDMAN, J. This is an appeal by the defendants from a decision of the trial court granting the plaintiffs a writ of mandamus against the defendant zoning board of appeals of Colchester (board)[1] ordering the board to issue a certificate approving the plaintiffs'[2] application for site plan approval for the construction of a bituminous concrete (asphalt) plant on the plaintiffs' property.

The facts in this matter were stipulated to by the parties and the case was heard by the trial court on the basis of the stipulation. For purposes of this appeal, the pertinent facts are as follows. On August 3, 1988, at a regular meeting of the Colchester planning and zoning commission (commission), the commission interpreted the town's zoning regulations to allow an asphalt plant as a permitted use on the land involved under § 12.2-12 of the Colchester zoning regulations. On June 5, 1989, the plaintiffs submitted an application to the commission for a Class 2 site plan approval for the construction of an asphalt plant on their property. On August 2, 1989, the commission held a public hearing on the application. On August 10, 1989, the commission denied the application. Although not stipulated to by the parties, the record reveals that the reasons for the denial were (1) the plaintiffs' failure to comply with

[1] The other defendant is Robert Bourassa, the chairperson of the zoning board of appeals.

[2] The plaintiffs in this case are Michael T. Fedus and Theodore L. Fedus, who own the real estate and lease it to the plaintiff Leo Fedus and Sons Construction Company, Inc.

a regulation requiring department of environmental protection approval prior to submitting the plan and (2) their failure to present sufficient information about traffic volume and controls, the protection of groundwater, and the protection of neighboring property values.

On September 1, 1989, the plaintiffs filed an application with the board, appealing from the denial of its site plan application by the commission. Shortly after the appeal was filed with the board, the commission determined at its meeting on September 6, 1989, that asphalt plants "were no longer allowed in Colchester." No notice of the commission's intention to reconsider its prior interpretation of the regulations, namely, that such plants were a permitted industrial use, was given to either the plaintiffs or the public prior to the meeting, nor was its outcome promulgated by publication. The reinterpretation occurred more than one year after the commission had originally determined that an asphalt plant was a permitted use in an industrial zone.

On October 24, 1989, the board notified the plaintiffs that a public hearing would be held on the appeal application on November 9, 1989, and duly advertised the public hearing in a local newspaper. On November 3, 1989, the board notified the plaintiffs that the public hearing had been canceled. Although not stipulated to by the parties, the letter sent by the board to the plaintiffs and contained in the record stated that the board felt that the commission's action of September 6, 1989, had left it with no jurisdiction to act on the appeal. The board did not hold a public hearing on the plaintiffs' application, nor did it render a decision on that application. The plaintiffs sought a writ of mandamus to compel the board to issue a certificate approving their site plan application and be ordered to sustain the appeal filed with it by the plaintiffs.

The trial court granted the plaintiffs the relief requested. This appeal follows.

There are two questions that must be addressed in this appeal. First, did the board have jurisdiction to hear the plaintiffs' appeal to it from the denial of their application to the planning and zoning commission for site plan approval, and, second, if it did have such jurisdiction, did the board's failure to hold a hearing within the time limits set forth in General Statutes § 8-7d result in the automatic approval of the subject site plan. We answer both questions in the affirmative.

In the recent case of *Castellon* v. *Board of Zoning Appeals,* 221 Conn. 374, 603 A.2d 1168 (1992), our Supreme Court distinguished between situations in which the local zoning regulations provide for an appeal to the zoning board of appeals from the action of a zoning commission on an application for site plan approval and situations in which the regulations do not so provide, leaving the jurisdiction of the zoning board of appeals to be governed by the general statutes. In the former, an appeal must first go to the zoning board of appeals and, in the latter, an appeal is taken directly to the Superior Court.

In *Castellon,* the Supreme Court analyzed its prior decision in *Conto* v. *Zoning Commission,* 186 Conn. 106, 439 A.2d 441 (1982). As part of its analysis, the court stated that they had concluded in *Conto*[3] (1) that "the 'town zoning regulations could legally provide that appeals from enforcement decisions of a town zoning commission must, in the first instance, be taken to the

---

[3] *Conto* v. *Zoning Commission,* 186 Conn. 106, 439 A.2d 441 (1982), involved the issuance of a zoning permit by the defendant zoning commission of the town of Washington. The Washington zoning regulations provided in pertinent part that the zoning board of appeals was empowered "[t]o hear and decide appeals where it is alleged that there is an error in any order or decision made by the Zoning Commission or its Enforcement Officer."

town's zoning board of appeals' ''; *Castellon* v. *Board of Zoning Appeals,* 378; and (2) "that neither General Statutes § 8-9 nor General Statutes § 8-10, nor the two sections taken together, permit an aggrieved party direct access to the court when the local regulations provide for an intermediate appellate step between the commission and the court."[4] Id., 380.

In *Castellon,* which involved an application for site approval as in the present case, the local zoning regulations did not provide for review of the zoning commission's decision by the zoning board of appeals. Our Supreme Court concluded that "there was no further administrative remedy available from the board for the plaintiffs to exhaust before resorting to an appeal pursuant to General Statutes § 8-9." Id., 382. It is therefore clear from *Castellon* that the question of whether the board in the present matter had jurisdiction to hear the plaintiff's appeal from the denial of its application to the commission for site plan approval is the "function solely of the particular regulations at issue." Id., 383.

Section 17.1 of the Colchester zoning regulations provides that "[a]ny person may appeal to the Zoning Board of Appeals when it is alleged that there is an error in any order, requirement, or decision made by the Commission or the Zoning Enforcement Officer related to the *enforcement* of these regulations."

---

[4] General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the superior court and, upon certification for review, to the appellate court in the manner provided in § 8-8."

General Statues § 8-10 provides: "The provisions of sections 8-8 and 8-9 shall apply to appeals from zoning boards of appeals, zoning commissions or other final zoning authority of any municipality whether or not such municipality has adopted the provisions of this chapter and whether or not the charter of such municipality . . . contains a provision giving a right of appeal from zoning boards of appeals or zoning commissions and any provision of any special act, inconsistent with the provisions of said sections, is repealed."

(Emphasis added.) The term "enforcement" has never been directly defined by our courts in this context. Zoning regulations, however, may be "enforced by a refusal of a building or occupancy permit where the construction or use of the land in question is not in compliance with the pertinent regulations." 82 Am. Jur. 2d, Zoning § 242; *Corsino* v. *Grover*, 148 Conn. 299, 170 A.2d 267 (1961). Similarly, the refusal by the commission to approve a site plan enforces the existing regulations and is therefore "enforcement" as that term is used in § 17.1 of the Colchester zoning regulations. We hold therefore that the board did have jurisdiction to hear the plaintiffs' appeal under § 17.1 of the Colchester zoning regulations.

The next question that we must consider is whether the commission's September 6, 1989 determination that asphalt plants "were no longer a permitted use in the town of Colchester" made the appeal to the board moot and thereby deprived the board of its jurisdiction because no practical relief could be given. In the present case, the town's zoning regulations were not amended; instead, the commission reinterpreted the same regulation one year later, coming to a different conclusion as to whether the use sought by the plaintiffs was a permitted use. When the commission engaged in reinterpretation, it had already acted on the plaintiffs' application and an appeal had been taken to the board. The question of whether an asphalt plant was a permitted use was no longer before the commission when it reinterpreted the town's regulations. The question on appeal from the commission to the board was whether the site plan was properly denied, not whether an asphalt plant was a permitted use at the time the commission denied the plaintiffs' application for site plan approval.

We turn now to the second question presented: whether General Statutes § 8-7d required automatic

approval of the site plan because the board did not hold a hearing on the plaintiffs' appeal within sixty-five days after the receipt of the plaintiffs' application. General Statutes § 8-7d (a)[5] requires that a hearing on any formal appeal to the zoning board of appeals commence within sixty-five days after receipt by the board of the petition. The parties have stipulated that no hearing was held; however, the board claims that its cancellation of the public hearing as confirmed by a letter to the plaintiffs was an action sufficient to satisfy the statute. We disagree.

In *Vartuli* v. *Sotire,* 192 Conn. 353, 363–64, 472 A.2d 336 (1984), our Supreme Court held that the statutory language of § 8-7d (b) is mandatory. In *Carr* v. *Woolwich,* 7 Conn. App. 684, 695, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), we held: "If General Statutes § 8-7d (b) is mandatory because of the clause providing for the applicant's consent to an extension of the sixty-five day time period, then General Statutes § 8-7d (a) is equally mandatory." If the hearing is not held within the statutory time period, the application is deemed to have been approved. Id., 693.

The defendants rely on our Supreme Court's decision in *Winchester Woods Associates* v. *Planning & Zon-*

---

[5] General Statutes § 8-7d (a) provides: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, *such hearing shall commence within sixty-five days* after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal." (Emphasis added.)

*ing Commission,* 219 Conn. 303, 592 A.2d 953 (1991), to support its claim that its action was sufficient to satisfy the requirements of § 8-7d (a). In *Winchester Woods Associates,* the zoning commission denied the plaintiff's resubdivision application because it believed it had no jurisdiction to accept the application. The court held that the automatic approval provisions of General Statutes § 8-26[6] were not triggered by the commission's failure to act. "The commission's vote not to accept the plaintiff's application at its June meeting, although based upon an incomplete examination of the factors to be considered in the exercise of its discretion and therefore an abuse of that discretion, was nevertheless an action by the commission." Id., 313.

The defendants, however, have failed to note the essential difference between the statute discussed in *Winchester Woods Associates* and the statute that applies to a zoning board of appeals. General Statutes § 8-26, applicable to *Winchester Woods Associates,* provides that "[t]he failure of the commission *to act* thereon shall be considered as an approval," (emphasis added) while General Statutes § 8-7d (a), applicable here, provides that a public hearing "shall commence within sixty-five days." The word "act" is not used in General Statutes § 8-7d.

"A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the

---

[6] General Statutes § 8-26 provides in pertinent part: "APPROVAL OF SUB-DIVISION AND RESUBDIVISION PLANS. WAIVER OF CERTAIN REGULATION REQUIREMENTS. APPLICATIONS INVOLVING INLAND WETLANDS AND WATER-COURSES. All plans for subdivisions and resubdivisions . . . shall be submitted to the commission with an application in the form to be prescribed by it. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. No plan of resubdivision shall be acted upon by the commission without a public hearing. . . . *The failure of the commission to act thereon shall be considered as an approval,* and a certificate to that effect shall be issued by the commission on demand. . . ." (Emphasis added.)

apparent intention of the lawmaking body. *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220, 448 A.2d 1344 (1982). When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 666, 560 A.2d 975 (1989)." (Internal quotation marks omitted.) *Winchester Woods Associates* v. *Planning & Zoning Commission,* supra, 309–310. Similarly, we presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, that it did not intend to enact meaningless provisions; *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 407, 528 A.2d 805 (1987); and that it intended to create a consistent body of law. *Warner* v. *Leslie-Elliott Construction, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984).

The language of § 8-7d is distinct from that of § 8-26 and, accordingly, we must presume the legislature intended to treat the sixty-five day hearing requirements in each situation differently. Accordingly, we must heed the plain language of § 8-7d and hold that its requirements can be satisfied only by the commencement of a timely public hearing and not by any other act.[7] Therefore, there was automatic approval of the plaintiffs' site plan.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We note that § 8-7d applies only in situations where a public hearing is necessary. If the board did not have jurisdiction over the appeal, then no hearing would have been necessary. As we have held that the board did have jurisdiction over the appeal, however, its erroneous determination that it did not cannot negate the provisions of the statute.