LEO FEDUS AND SONS CONSTRUCTION COMPANY, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN AND BOROUGH OF COLCHESTER ET AL.
(14547)

PETERS, C. J., CALLAHAN, BERDON, KATZ and F. X. HENNESSY, Js.

---

[12] See footnote 3.

Argued December 1, 1992—decision released April 27, 1993

*Charles L. Howard,* with whom was *Gregory T. D'Auria,* for the appellants (defendants).

*David F. Sherwood,* for the appellees (plaintiffs).

CALLAHAN, J. The dispositive issue in this appeal is whether the plaintiffs, Leo Fedus and Sons Construction Company, Inc., et al.,[1] were entitled to the auto-

---

[1] Michael T. Fedus, Theodore L. Fedus, and Leo Fedus and Sons Construction Company, Inc., are the plaintiffs. Michael and Theodore Fedus own the subject real estate and lease it to the construction company.

matic approval of their site plan application to permit the construction of an asphalt plant in Colchester because the Colchester zoning board of appeals, believing that it did not have jurisdiction over their appeal, did not hold a public hearing within the time limits set forth in General Statutes § 8-7d (a). The defendants, the zoning board of appeals for the town and borough of Colchester (board) and Robert Bourassa, its chairperson, appealed to the Appellate Court from the judgment of the trial court granting the plaintiffs a writ of mandamus ordering the board to issue a certificate approving the plaintiffs' site plan application for the construction of an asphalt plant on their property. The Appellate Court affirmed the trial court's judgment. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 27 Conn. App. 412, 606 A.2d 725 (1992). We granted the defendants' petition for certification to appeal.[2] We now reverse the judgment of the Appellate Court.

The relevant facts upon which the Appellate Court relied are set forth in its opinion. "On August 3, 1988, at a regular meeting of the Colchester planning and zoning commission (commission), the commission interpreted the town's zoning regulations to allow an asphalt plant as a permitted use on the land involved under § 12.2-12 of the Colchester zoning regulations. On June 5, 1989, the plaintiffs submitted an application to the commission for a Class 2 site plan approval for the

---

[2] This court granted the defendants' petition for certification to appeal from the decision of the Appellate Court limited to the following issues:

"1. Does the 'automatic approval' doctrine, applicable to a zoning commission that fails to issue timely decisions on site plan or subdivision applications under General Statutes §§ 8-3 (g) and 8-26, also apply to a zoning board of appeals that fails to hold a hearing on an appeal under General Statutes § 8-7d (a)?

"2. Does the 'automatic approval' doctrine apply when the zoning board of appeals timely issues a decision that it would not hold a hearing because it believed it lacked jurisdiction?" *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 222 Conn. 911, 911–12, 608 A.2d 694 (1992).

construction of an asphalt plant on their property. On August 2, 1989, the commission held a public hearing on the application. On August 10, 1989, the commission denied the application. Although not stipulated to by the parties, the record reveals that the reasons for the denial were (1) the plaintiffs' failure to comply with a regulation requiring department of environmental protection approval prior to submitting the plan, and (2) their failure to present sufficient information about traffic volume and controls, the protection of groundwater, and the protection of neighboring property values.

"On September 1, 1989, the plaintiffs filed an application with the board, appealing from the denial of its site plan application by the commission. Shortly after the appeal was filed with the board, the commission determined at its meeting on September 6, 1989, that asphalt plants 'were no longer allowed in Colchester.' No notice of the commission's intention to reconsider its prior interpretation of the regulations, namely, that such plants were a permitted industrial use, was given to either the plaintiffs or the public prior to the meeting, nor was its outcome promulgated by publication. The reinterpretation occurred more than one year after the commission had originally determined that an asphalt plant was a permitted use in an industrial zone.

"On October 24, 1989, the board notified the plaintiffs that a public hearing would be held on the appeal application on November 9, 1989, and duly advertised the public hearing in a local newspaper. On November 3, 1989, the board notified the plaintiffs that the public hearing had been canceled. Although not stipulated to by the parties, the letter sent by the board to the plaintiffs and contained in the record stated that the board felt that the commission's action of September 6, 1989, had left it with no jurisdiction to act on the appeal. The board did not hold a public hearing on

the plaintiffs' application, nor did it render a decision on that application. The plaintiffs sought a writ of mandamus to compel the board to issue a certificate approving their site plan application and be ordered to sustain the appeal filed with it by the plaintiffs. The trial court granted the plaintiffs the relief requested." *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 413–15.

The first certified question is: "Does the 'automatic approval' doctrine applicable to a zoning commission that fails to issue timely decisions on site plan or subdivision applications under General Statutes §§ 8-3 (g) and 8-26,[3] also apply to a zoning board of appeals that fails to hold a hearing on an appeal under General Statutes § 8-7d (a)?" *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 222 Conn. 911, 608 A.2d 694 (1992). We conclude that it does not.

General Statutes § 8-7d (a) provides: "Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period

---

[3] General Statutes § 8-26 applies to planning commissions rather than zoning commissions.

shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal."

It is undisputed that the board did not hold a hearing on the plaintiffs' appeal within sixty-five days after its receipt of their application. It is also undisputed that the board, believing that it had no jurisdiction to hear the plaintiffs' appeal because of the zoning commission's action, canceled the public hearing on the appeal by letter within sixty-five days of the receipt of the plaintiffs' application and never rescheduled it.[4]

The Appellate Court agreed with the trial court that the time requirements of § 8-7d (a) could be satisfied only by the commencement of a public hearing within sixty-five days after the receipt by the board of the plaintiffs' appeal and that the failure of the defendant board to hold such a hearing resulted in the automatic approval of the plaintiffs' site plan application, approval of which had been denied by the zoning commission. The Appellate Court, relying principally on *Vartuli* v.

---

[4] General Statutes § 8-7d (a) expressly provides that in order to invoke the time constraints in that subsection, it must first be determined whether a "hearing is required on such petition, application, request or appeal . . . ." The parties dispute whether a hearing was in fact required to be held by the board on the plaintiffs' appeal.

Section 17.1 of the Colchester zoning regulations, however, provides that "[a]ny person may appeal to the Zoning Board of Appeals when it is alleged that there is an error in any order, requirement, or decision made by the Commission or the Zoning Enforcement Officer related to the enforcement of these Regulations." General Statutes § 8-6 also states that one of the duties of a zoning board of appeals is that it shall "hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter . . . ." The defendants contend that nowhere in § 17.1 or General Statutes § 8-6 is it stated that the board must hold a hearing when a party has alleged an error in a decision made by the zoning commission. The contention that neither provision requires a public hearing would render these provisions empty shells. These provisions clearly require that a right to an appeal embraces a right to a meaningful appeal in which a public hearing is held. Such a public hearing was required under the facts of this case.

*Sotire,* 192 Conn. 353, 363–64, 472 A.2d 336 (1984), and *Carr* v. *Woolwich,* 7 Conn. App. 684, 695, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), concluded that the language in § 8-7d (a) is mandatory rather than directory, and ordained that automatic approval of the plaintiffs' site plan application must follow from the failure of the board to hold a timely hearing. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 27 Conn. App. 420.

In *Vartuli* v. *Sotire,* supra, a coastal site plan review was required under General Statutes § 22a-109. Section 22a-109 (g) provided: "The coastal site plan review required under this section shall be subject to the same statutory requirements as subsections (a) and (b) of section 8-7d for the purposes of determining the time limitations on the zoning commission in reaching a final decision." Section 8-7d (b), the applicable section in *Vartuli,* provided: "[A] decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such plan." We determined that § 8-7d (b) was "further implemented by General Statutes § 8-3 (g), under which '[a]pproval of a site plan [by a zoning commission] shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . .' " Id., 358–59. We concluded: "Reading the three sections together compels the conclusion that . . . the legislature has expressly made approval of a coastal development plan mandatory upon failure to disapprove an application within the specified time period." Id., 362. We also noted in *Vartuli* that § 8-7d (b) requires an applicant's consent for an extension of the statutory time period, thus leading to an inference that the time limits contained in § 8-7d (b) are mandatory.[5] Id., 363–64.

---

[5] Although the Appellate Court in *Carr* v. *Woolwich,* 7 Conn. App. 684, 695, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), concluded that General Statutes § 8-7d (a) did not apply to the facts of that

Section 8-7d (a) contains similar consent language. The consent language in § 8-7d (a), the Appellate Court determined, required an inference that the time limits of § 8-7d (a) are mandatory in this case. It consequently concluded that the board's failure to comply with those time limits resulted in the automatic approval of the plaintiffs' application. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 27 Conn. App. 420.

The defendants contend that the statutes and cases relied on by the Appellate Court relate only to commissions and do not mandate that the automatic approval doctrine apply to the Colchester zoning board of appeals as a consequence of its cancellation of the public hearing on the plaintiffs' appeal. They argue that because neither § 8-7d (a), nor § 8-7, the statute governing zoning appeals, contains provisions expressly requiring that the inaction of a zoning board of appeals result in the automatic approval of an application, we should not interpret § 8-7d (a) to require that the Colchester board's cancellation of the plaintiffs' hearing result in the automatic approval of the plaintiffs' application. The defendants assert that it is not the role of the judiciary to supply omissions in the statutes and that, if the legislature had intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days was to effect the automatic approval of an application, it would simply have said so in § 8-7 as it has in §§ 8-3 (g) and 8-26 regarding zoning and planning commissions respectively.

Section 8-3 (g), which specifically applies to zoning commissions, provides in pertinent part: "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified

---

case, and its conclusion was therefore dicta, it stated that § 8-7d (a), like § 8-7d (b), mandates the automatic approval of an application by a zoning commission that failed to act in a timely manner.

in section 8-7d." Section 8-26, which applies to planning commissions, provides in pertinent part that the failure of a commission to act on a subdivision application within the time limits prescribed in § 8-26d "shall be considered as an approval." Section 8-7d (a), however, contains no provision expressly mandating automatic approval of a site plan application that is the subject of an appeal, nor does § 8-7, which incorporates the time limits of § 8-7d, contain any such provision.

In *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 235 A.2d 643 (1967), we held that a decision by a zoning board of appeals that had been rendered beyond the applicable time period, did not result in the automatic approval of the appellant's application. *Donohue,* however, construed § 8-7 prior to its amendment in 1977, an amendment that incorporated the time limits of § 8-7d into § 8-7. Prior to 1977, § 8-7 provided in pertinent part that "[s]aid board shall decide such appeal within sixty days after the hearing." General Statutes (Rev. to 1966) § 8-7. We concluded, in *Donohue,* that § 8-7 related to procedure and was directory and not mandatory. We noted, in support of our conclusion, that the "statute contains nothing which expressly invalidates a belated decision or which inferentially makes compliance therewith a condition precedent." *Donohue* v. *Zoning Board of Appeals,* supra, 554; see also *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 157, 292 A.2d 893 (1972).

The first certified question requires us to revisit *Donohue* to determine whether the automatic approval doctrine applies to a zoning board of appeals for its failure to hold a public hearing in view of the present statutory scheme of § 8-7d (a) that includes language of consent and prescribes time limits, and is now contained in § 8-7d (a) and incorporated in the present § 8-7. To resolve this difficult question, we must recon-

cile two conflicting lines of reasoning. On the one hand, we held, in *Vartuli,* that the failure of a zoning commission to act within the time constraints of § 8-7d (b) resulted in the automatic approval of an application for a coastal management act site plan by a zoning commission, principally because of the mandatory language in § 8-26, but in part also because § 8-7d (b) contained language requiring the applicant's consent for an extension of the statutory time period. We reasoned in that case that the language requiring the applicant's consent to an extension of time permitted the inference that the time constraints in the statute were mandatory. Section 8-7d (a) contains similar language requiring an applicant's consent for an extension of the time limits contained in the statute, suggesting that the time limits in § 8-7d (a) are mandatory and that the board's failure to comply with them resulted in the automatic approval of the plaintiff's application.

On the other hand, applicable tenets of statutory construction counsel us to ascribe significance to the absence, in § 8-7d (a), of the explicit provisions for automatic approval found in §§ 8-3 (g) and 8-26. It is a principle of statutory construction that a court must construe a statute as written. *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987). "Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them." (Internal quotation marks omitted.) *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); see also *State* v. *Bunkley,* 202 Conn. 629, 640, 522 A.2d 795 (1987); *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 485, 493 A.2d 874 (1985). "The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Burnham* v.

*Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981). " 'It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature.' *Duart* v. *Axton-Cross Co.,* 19 Conn. Sup. 188, 190, 110 A.2d 647 (1954)." *State* v. *Perruccio,* 192 Conn. 154, 163 n.4, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). It is also a tenet of statutory construction that the legislature is presumed to be aware of existing statutes. *Plourde* v. *Liburdi,* 207 Conn. 412, 416–17, 540 A.2d 1054 (1988); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.12. Because §§ 8-3 (g) and 8-26 expressly provide for the automatic approval of applications when a zoning commission or planning commission do not act within prescribed time periods, it can be inferred that had the legislature intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days results in automatic approval, the legislature would have so provided. *Plourde* v. *Liburdi,* supra, 417. Moreover, if a mandate for automatic approval is to be inferred from the consent language in § 8-7d (a), that construction would render the specific automatic approval language in §§ 8-3 (g) and 8-26 "mere surplusage and such an interpretation has been proscribed by this court." *Morgan* v. *East Haven,* 208 Conn. 576, 583 n.9, 546 A.2d 243 (1988).

Our most recent case addressing the application of the automatic approval doctrine to zoning boards of appeals appears to have resolved the tension that exists between the consent language of § 8-7d and the rules of statutory construction. In *Koepke* v. *Zoning Board of Appeals,* 223 Conn. 171, 177, 610 A.2d 1301 (1992), we determined that because the Coventry zoning board of appeals had failed to publish adequate notice of a hearing, the hearing and subsequent revocation of the plaintiff's permit were invalid. We then addressed "the consequences that flow from a zoning board's invalid

hearing and subsequent ruling on an appeal from a decision of a zoning enforcement officer." Id. On that issue we stated: "While the board's failure to give proper notice of its public hearing nullified its subsequent actions, that default had no further automatic consequences. *Even if a failure to give proper notice were deemed the equivalent of a failure to take timely action within the time constraints of § 8-7, that statute, contrary to General Statutes §§ 8-3 (g) or 8-26, does not make inaction tantamount to approval either of the challenged zoning permit or of the challenged appeal.* 'The statute contains nothing which expressly invalidates a belated decision or which inferentially makes compliance [with time constraints for board decisions] a condition precedent.' *Donohue* v. *Zoning Board of Appeals,* supra, 554." (Emphasis added.) Id., 178–79.

To paraphrase the conclusions of the court in *Keopke,* it would be inappropriate to permit the plaintiffs in the present case to obtain their site plan approval solely because of the board's impression, even if mistaken, that it did not have jurisdiction to hear the plaintiffs' appeal. The plaintiffs were initially denied site plan approval by the zoning commission because of safety and environmental concerns. Without a clear statutory mandate to do otherwise, those concerns should be addressed rather than automatically ignored. "The rationality of land use planning procedures is strengthened by the disposition of zoning appeals on their merits. *Caserta* v. *Zoning Board of Appeals,* [219 Conn. 352, 362, 593 A.2d 118 (1991)]." Id., 179–80.

The plaintiffs argue that the language in *Koepke* that militates against their position is dictum. Moreover, they assert that *Koepke* was based on *Donohue* v. *Zoning Board of Appeals,* supra, a decision that is no longer applicable to the issue of automatic approval because *Donohue* was decided prior to 1977, before § 8-7 was amended. The amendment to § 8-7 now links the dis-

position of matters before the zoning board of appeals directly to the time periods set forth in § 8-7d. This statutory change, the plaintiffs assert, makes *Koepke's* reliance on *Donohue* misplaced, thus rendering *Koepke's* dictum an inaccurate statement of the current law because, prior to 1977, § 8-7 did not contain the language now present in § 8-7d (a) requiring the applicants' consent for the extension of the prescribed time limits. We disagree.

Although the factual predicate in *Koepke* was inadequate notice of a public hearing, *Koepke* directly confronted the issue of the failure of the board to take timely action within the time constraints of § 8-7d. *Keopke* v. *Zoning Board of Appeals,* supra, 178–79. Furthermore, a resolution of that issue was necessary to our decision in *Koepke* because we declared the hearing "void," a declaration that equated the hearing in *Koepke* with no hearing at all having been held, the exact situation in this case on appeal. Moreover, to the extent that *Donohue* is cited for the proposition that automatic approval is not expressed in, or to be inferred from, the present statutory scheme embodied in §§ 8-7 and 8-7d as it relates to zoning boards of appeals, reliance on *Donohue* is not misplaced.

The plaintiffs also argue, citing *Vartuli* v. *Sotire,* supra, 362, and *Carr* v. *Woolwich,* supra, 691–92, that if this court does not apply the automatic approval doctrine, an inconsistent body of law will be created because, in all other instances of land use decisionmaking, the automatic approval doctrine applies because of either §§ 8-3 (g) or 8-26. Moreover, the plaintiffs contend that the legislature clearly intended that the time limits applicable to all land use agencies be uniform.[6] We noted in *Vartuli,* however, that "[t]he

[6] Senator Louis Cutillo remarked: "Mr. President, the bill imposes . . . uniform time periods for commencing hearings, completing hearings and rendering decisions for specified zoning petitions. Applications, requests

issue of continued appellate jurisdiction is of course not identical with the issue of timely response to initial land use applications." *Vartuli* v. *Sotire,* supra, 361. Zoning boards of appeals do not perform the same functions as zoning commissions. Zoning boards of appeals do not adjudicate initial land use applications, but review those already acted upon by a municipality's zoning commission or enforcement officer. The defendant board in this case, after duly advertising the public hearing in a local newspaper, notified the plaintiffs by letter that the public hearing originally scheduled was canceled. The board canceled the hearing because it believed, apparently in good faith and relying on the advice of counsel, that the commission's action of reinterpreting its regulations regarding asphalt plants had left the board with no jurisdiction to act on the plaintiffs' site plan application, and no choice but to cancel the hearing. The board's appellate function is not advanced by the substitution of an automatic approval for a decision of an appeal on its merits. *Koepke* v. *Zoning Board of Appeals,* supra, 179.

or appeals before a zoning commission. The combined planning and zoning commission or a zoning board of appeals. It imposes uniform time periods for commencing hearings, completing hearings and rendering decisions in all matters when a formal application request or appeal is submitted to a planning commission. It requires the decision on an application for approval or a site plan be rendered within 65 days after date of receipt of the site plan and permit the extension of such time period for an additional 130 days but only with the consent of the applicant." 20 S. Proc., Pt. 8, 1977 Sess., pp. 2999–3000.

Representative Janet Polinsky stated: "Simply stated, this bill proposes that all public hearings must be held within 35–65 days of official receipt of a request for such hearing; further, that the public hearing shall be completed within thirty days after it begins and this thirty day period would, of course, only apply in those very few cases where the subject matter is so controversial as to cause the hearing to be conducted over several sessions. And lastly, that the decision must be rendered within 65 days after the public hearing is completed.

"This bill would also permit extensions of each of the uniform time periods specified but only where the applicant consents to such extension and in no event could an extension exceed twice the time period specified." 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2513–14.

Consistent with our opinion in *Koepke,* therefore, we conclude that a zoning board of appeals is not subject to the automatic approval doctrine because it fails to hold a public hearing within the time limits contained in § 8-7d (a).[7] It is unnecessary, therefore, to address in depth the second certified question concerning whether the "automatic approval" doctrine applies when a zoning board of appeals timely issues a decision that it would not hold a hearing because it believed it lacked jurisdiction to do so.[8] We answer both certified questions in the negative.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to remand the case to the trial court with direction to remand the plaintiffs' appeal to the defendant board in order to allow the board to conduct a hearing on the merits of the plaintiffs' application.[9]

In this opinion PETERS, C. J., KATZ and F. X. HENNESSY, Js., concurred.

BERDON, J., concurring. I concur in the result.

---

[7] *Vartuli* v. *Sotire,* 192 Conn. 353, 472 A.2d 336 (1984), is restricted to its facts, i.e., a site plan application to a zoning commission. Both *Vartuli* and *Carr* v. *Woolwich,* 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), to the extent that they are inconsistent with this opinion only, are overruled.

[8] The board's refusal to hold a hearing could have been addressed by the plaintiffs' petition to the trial court for a writ of mandamus or a mandatory injunction compelling the defendant board to hear and decide their appeal. See *Monroe* v. *Middlebury Conservation Commission,* 187 Conn. 476, 480–82, 447 A.2d 1 (1982).

[9] Although not an issue in either of the certified questions before us, we note that the Appellate Court did determine that the board had jurisdiction to hear the plaintiffs' appeal. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 27 Conn. App. 412, 417, 606 A.2d 725 (1992).