[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
The plaintiff, Pfizer, Inc., filed three appeals regarding assessments by the Town of Groton on personal property Pfizer owns in Groton. Docket number CV 96 0538437 is an appeal pursuant to General Statutes § 12-117a related to personal property at Pfizer's Organic Synthesis Plant ("OSP"). Docket number CV 96 0538438 is an appeal pursuant to General Statutes § 12-117a
related to personal property at Pfizer's Waste Water Treatment Facility ("WWTF"). Docket number CV 96 0539176 is an appeal pursuant to General Statutes § 12-119 challenging the legality of the assessments on the personal property at both the OSP and the WWTF.
In its appeals, Pfizer alleges that the Groton assessor improperly assessed the personal property at the OSP and WWTF in that such property was exempt under subdivisions (51), (52), and (72) of General Statutes § 12-81. Pfizer further alleges that it was not required to list the property with the assessor as exempt property because: (a) such property was not fully operational and certified by the Department of Environmental Protection ("DEP") prior to November 1, 1995; (b) the property under construction, whether or not exempt, had not yet acquired a business situs as of the assessment date within the state and was therefore not required to be listed; and (c) the Groton assessor has not historically required property under construction to be listed, so Groton is estopped from imposing such a requirement upon Pfizer in this case.
Pfizer and Groton filed cross motions for partial summary judgment on the issue of whether Groton properly taxed the personal property at the OSP and WWTF. The issues of the valuation of the property and the propriety of the 25% penalty imposed by Groton are not raised in the motions for partial summary judgment. The parties agreed, with the court's concurrence, that these issues need to be determined only if the court finds that the property was properly taxed by Groton.
In Groton's motion for partial summary judgment, it argues that Pfizer did not comply with the clear requirements set forth in subdivisions (51), (52) and (72) of General Statutes § 12-81
to claim exemptions under those provisions for the October 1, 1995 grand list. Groton claims that as a result of Pfizer's failure to comply with the provisions of these subdivisions, Pfizer has waived its entitlement to any exemptions for the property at issue. CT Page 12666
In response to Groton's motion, and in support of its own motion for partial summary judgment, Pfizer argues that the statutory intent of subdivisions (51) and (52) of General Statutes § 12-81 is to provide incentives for industries to invest in anti-pollution devices. Pfizer claims that imposition of a tax on anti-pollution devices under construction will defeat that legislative intent. Pfizer further claims that the filing requirements of subdivisions (51) and (52) apply only to completed, DEP certified property, not to property under construction. Pfizer argues that General Statutes § 12-81
(72) was meant to be an incentive for industries to stimulate investment in Connecticut by manufacturing companies. Pfizer argues that the legislature intended that the exemption of machinery and equipment under General Statutes § 12-81 (72) to begin from the time of acquisition or purchase, and to impose a tax on the machinery or equipment before it has been "placed in service" would defeat the legislative intent to encourage manufacturing investment in the state. Pfizer finally claims that Groton is not entitled to partial summary judgment because Groton has not proved the facts surrounding Pfizer's alleged waiver of the exemptions because to do so would require a showing that Pfizer could have filed for the exemptions but failed to do so. Pfizer argues that the court cannot grant Groton's motion for partial summary judgment because Groton has not shown that Pfizer could have obtained DEP certification of its anti-pollution devices at the OSP and WWTF prior to October 1, 1995 or that Pfizer could have declared OSP property as "placed in service" as of October 1, 1995.
In its reply brief, Groton raises for the first time the argument that Pfizer failed to exhaust its administrative remedies concerning the status of the property at the OSP and WWTF as exempt or nonexempt. Groton claims that because Pfizer did not attempt to obtain the necessary certifications under subdivisions (51) and (52) from the DEP prior to October 1, 1995, it cannot argue that the DEP would not have granted the certifications necessary to claim the exemptions. Groton claims that Pfizer's failure to apply to the DEP for the requisite certifications forecloses it from contesting in this forum whether the property would have qualified for the DEP certifications as of October 1, 1995. Groton also claims that Pfizer failed to exhaust its administrative remedies with respect to its claim of exemption under subdivision (72) of General Statutes § 12-81 in that it failed to raise the issue of whether the property was exempt with either the Groton assessor CT Page 12667 or the Office of Policy and Management pursuant to General Statutes § 12-81 (72) or § 12-94b(b).
Because the exhaustion doctrine implicates the court's subject matter jurisdiction to hear the appeal, we will address this issue first. The exhaustion doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.Johnson v. Statewide Grievance Committee, 248 Conn. 87, 94, ___ A.2d ___ (1999). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Id.
Groton cites no case law that supports its position that Pfizer must first apply for certification from DEP, the assessor or OPM in order to raise these issues in its appeals pursuant to General Statutes §§ 12-117a and 12-119. There is no provision in these appeal statutes that requires that one appeal to another state agency as a prerequisite to challenging an allegedly excessive or illegal assessment of one's property. Pfizer appealed to the local board of assessment appeals, which is the prerequisite to filing its appeals pursuant to § 12-117a. In tax appeals pursuant to General Statutes § 12-117a and 12-119, the court does not review the actions of the agency, but hears the case de novo. Torres v. Waterbury, 249 Conn. 110, 118-19, ___ A.2d ___ (1999). Neither statute requires that a taxpayer raise before an intermediate board or agency particular issues or arguments in support of its claims of exemption or nontaxability in order to file a tax appeal challenging the assessment of its property. Accordingly, we do not find that the court lacks subject matter jurisdiction over these tax appeals due to a failure by Pfizer to exhaust its administrative remedies.
While the parties have filed statements of fact and counterstatements of fact, the issues in this case are essentially legal issues involving statutory construction. The material facts of this case are not in dispute for purposes of determining whether Groton properly found that the property at issue was not exempt on the October 1, 1995 grand list. The parties' main dispute is the proper interpretation of the statutes and application of the law to the circumstances of this case.
The following facts are not in dispute. In January 1993, CT Page 12668 Pfizer approved a major capital project to expand its pharmaceutical manufacturing capacity at its production facility in Groton. This capital project authorized the construction of the OSP, which is a state-of-the-art organic synthesis plant that manufactures active pharmaceutical compounds for prescription drugs.
The production of prescription drugs is highly regulated by the Federal Drug Administration ("FDA"). The FDA regulates the quality of both the manufacturing process and the ultimate product. The FDA must inspect and approve the design, construction and operation of any facility constructed for pharmaceutical manufacturing. Even after the FDA approves the design of the facility, it must still test and approve pharmaceuticals manufactured in that facility before they can be further processed for consumer distribution.
Pfizer's OSP comprises four components: the main production area (Building 80); solvent recovery (Buildings 82A and 82B); a warehouse (Building 83); and an open-roofed area in which hydrogenation, a step in the processing of certain pharmaceuticals, is performed (Building 81).
The main production area consists of a series of interconnected reactor vessels for organic chemical reactions that produce pharmaceutical compounds ancillary to prescription drug production and a solvent recovery system that recycles organic solvents used in the chemical reactions to minimize raw material cost and the amount of hazardous waste generated.
The OSP vessels are interconnected by pipes and hoses through a central manifold room which permit Pfizer to hook up only the reactor tanks needed for a particular drug. Also included are temperature control equipment and systems necessary to maintain the required ambient and environmental conditions in the production and control areas as well as dryers, centrifuges and filters to complete the processing of certain products into a granular or powder form. The system is highly automated and utilizes computers and cameras to maintain, control and document virtually all operations. OSP also contains high quality anti-pollution devices specific to its functions.
The final design of OSP was completed by 1993. The primary buildings that comprise OSP were constructed during 1993-94. The assembly and installation of OSP machinery and equipment was CT Page 12669 substantially complete by December 1994, but the hydrogenation and solvent recovery systems were not completed until late 1995.
Because Pfizer was required to seek FDA approval of OSP as aprocess, it chose to expedite that procedure by testing the facility with an FDA approved pharmaceutical product called Sertraline. From December 1994 to April 1995, Pfizer tested OSP by producing small test batches of Sertraline. On April 4, 1995, Pfizer requested that FDA approve OSP for the production of Sertraline. Following an inspection of the facility during July 1995, FDA approved OSP for the production of Sertraline on October 5, 1995.
Pfizer argues that because the FDA had not approved the supplemental new drug application and had not certified the OSP for production of any pharmaceutical compound, and because OSP was not complete and could not be used for the purpose for which it was intended, it was not yet installed, or "placed in service," as of October 1, 1995 as that term is defined under the United States Internal Revenue Code. This provision is incorporated into subdivision (72). Therefore, Pfizer did not include personal property contained within the OSP on its October 1, 1995, personal property declaration filed with Groton.
By December 1995, Pfizer had received FDA approval of its OSP, completed its testing of the facility and capitalized it for financial statement and income tax purposes, since it could then be used for the purpose for which it was intended.
The technology chosen by Pfizer for the WWTF uses microorganisms that eat the waste contained within the industrial wastewater. As the microorganisms eat the waste, they reproduce and some die. Excess microorganisms are skimmed and burned in a system known as a fluidized bed combustor. The ashes are then disposed. Construction of the WWTF began in August, 1993. Testing of the WWTF began in March, 1995. On October 1, 1995, the WWTF was almost 90% constructed, and was still in its testing phase. As of October 1, 1995, Pfizer had received a temporary operating permit allowing for the testing of emission controls, but Pfizer did not have the final air quality operating permit to operate the WWTF. The DEP certified the WWTF as exempt from property taxation on February 7, 1996, and Pfizer received a final air quality operating permit from the DEP on July 19, 1996. Pfizer did not include the WWTF as personal property on its 1995 Personal Property Declaration and did not claim the WWTF property CT Page 12670 as exempt from Groton's property tax pursuant to § 12-81
(51). On February 7, 1996, the DEP certified to Pfizer that the WWTF facility was approved.
It is undisputed that Pfizer did not file claims for exemption of the personal property located at the OSP and WWTF with the Groton assessor on or before November 1, 1995, and did not seek any extensions of time to file such claims. For the 1996 grand list, Pfizer claimed its anti-pollution devices within OSP and WWTF as exempt under General Statutes § 12-81 (51) and (52).
On February 6, 1996, the Groton assessor issued a supplemental assessment on the personal property contained within Pfizer's OSP and WWTF on the basis that it had been improperly omitted from Pfizer's declaration. The supplemental assessment was based upon a total assessed value of $174,562,000, and included a twenty-five percent (25%) omission penalty. The supplemental assessment amount relevant to the OSP alone is $133,000,000.
The first issue we must decide is whether §§ 12-81 (51), (52) or (72) require Pfizer to file certain documentation with the assessor on or before the October 1, 1995 grand list for personal property within the WWTF and OSP for that personal property to be exempt from Groton property taxes.
General Statutes (Rev, to 1995) § 12-81 provides exemptions from property taxation of specific well-defined property. Subdivision (51) provides an exemption from taxation of water pollution control structures and equipment.[1]
Subdivision (52) provides an exemption from taxation of structures and equipment for air pollution control.[2]
Subdivision (72) provides an exemption for new machinery and equipment for four years following the assessment year in which the machinery and equipment is acquired.[3]
Pfizer claims that it could not comply with General Statutes §§ 12-81 (51), 12-81 (52) and 12-81 (72) because the property was under construction and therefore not placed in service for assessment purposes. Pfizer claims that Groton was premature in placing the WWTF and OSP facilities on Groton's tax roll prior to WWTF being certified for exemption by DEP and OSP being approved by the FDA for production of Sertraline. CT Page 12671
The issue raised by Pfizer is whether Pfizer is entitled to the exemptions under subdivisions (51), (52) and (72) prior to DEP certification and the placing of such equipment in service. In other words, does § 12-81 provide an automatic exemption for property that will be claimed for exemption upon completion and certification.
There are no Connecticut cases dealing with the issue of whether §§ 12-81 (51), 12-81 (52) and 12-81 (72) exempt taxpayers from the payment of property taxes during the period of construction of manufacturing equipment and machinery, and anti-pollution devices. We must consider whether under § 12-81, a taxpayer must pay property taxes on its personal property during construction and then claim eligibility for exemption from property taxes only when the project is completed and certified for use.
Pfizer claims that Groton's reading of the statute to provide that personal property that is not yet placed in service or certified by DEP is taxable, runs contrary to the legislative intent that personal property that falls within the parameters of subdivisions (51), (52) and (72) should be exempt. Pfizer argues that the legislature intended that property that will be exempt upon completion is not taxable during construction.
There are three basic principles which guide us when deciding issues involving tax exemption. "`First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption.'" Petco Insulation Co. v. Crystal, 231 Conn. 315,649 A.2d 790 (1994), quoting Plastic Tooling Aids v.Commissioner, 213 Conn. 365, 369, 567 A.2d 1218 (1990).
In resolving the issue before us, we are further guided by the well established rule that requires us to ascertain and give effect to the apparent intent of the legislature. Commissioner ofPublic Safety v. Freedom of Information Commission,204 Conn. 609, 619-20, 529 A.2d 692 (1987). The primary rule of statutory construction is that if the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature and then there is no need to construe the statute.Bolt Technology Corp. v. Commissioner of Revenue Services, CT Page 12672213 Conn. 220, 229, 567 A.2d 371 (1989). "It has often been said that the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say." Id.; seeSummit Hydropower v. Commissioner of Environmental Protection,226 Conn. 792, 805, 629 A.2d 367 (1993). "Where statutory language is clearly expressed . . . courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there." (Internal quotation marks omitted.) Commissioner ofPublic Safety v. Freedom of Information Commission, supra,204 Conn. 620. "A statute does not become ambiguous solely because the parties disagree as to its meaning." Id. "Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them." (Internal quotation marks omitted.) Leo Fedus Sons ConstructionCo. v. Zoning Board of Appeals, 225 Conn. 432, 441, 623 A.2d 1007
(1993). "It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." Id., 442. Finally, "statutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." 84 Century Limited Partnership v. Boardof Tax Review, 207 Conn. 250. 263, 541 A.2d 478 (1988).
We start our analysis by examining § 12-81 (72). Section12-81 (72) exempts new machinery and equipment acquired after July 1, 1992 for use in manufacturing processes, research and development, including experimental or laboratory research and development related to manufacturing. This statutory exemption runs for four full assessment years after the assessment year in which the machinery and equipment is acquired. A condition of the exemption is that the party seeking the exemption must file with the assessor a list of such machinery or equipment that the party claims to be exempt from taxation prior to November 1st in the year the exemption is claimed. General Statutes § 12-81
(72)(b). "Failure to file such application in this manner and form within the time limit prescribed shall constitute a waiver of the right to such exemption for such assessment year." General Statutes § 12-81 (72)(b).
Under the plain wording of the statute, if the OSP and WWTF personal property was exempt from taxation as newly acquired machinery or equipment from the time Pfizer acquired title, Pfizer lost the right to claim the exemption by failing to follow CT Page 12673 the filing requirements with the assessor as required in §12-81 (72). "`[N]o claimant is entitled to an exemption unless he satisfies all the statutory requirements.'" Connecticut Water Co.v. Barbato, 206 Conn. 337, 343, 537 A.2d 490 (1988), quoting Renzv. Monroe, 162 Conn. 559, 562-63, 295 A.2d 558 (1972). "Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms." United Church of Christ v. West Hartford,206 Conn. 711, 718, 539 A.2d 523 (1988).
Section 12-81 (72) is clear and unambiguous that it applies to newly acquired machinery and equipment, and the eligibility for exemption, if claimed, runs from when title to the personal property is acquired. Pfizer would have us read into the statute that a taxpayer is automatically entitled to a tax exemption without claiming such exemption when the machinery or personal property acquired has not yet been put to a use which makes it fully operational. This, we cannot do. See Petco Insulation Co.v. Crystal, supra, 231 Conn. 320. To read into the statute a provision that the property is exempt or nontaxable until construction is complete or a claim for exemption is filed would extend the exemption beyond what the legislature has explicitly set forth in the statute.
We note that if Pfizer filed for a tax exemption under §12-81 (72), Groton, under § 12-94b would be reimbursed for the loss of taxes resulting from the exemption. Section 12-94c, which provides for a depreciation schedule for newly acquired machinery and equipment exempt under § 12-81 (72), runs from the date of acquisition, not the date when the machinery or equipment has been put into service.
The problem with Pfizer's argument is that it assumes that its personal property was exempt or nontaxable from the moment it was acquired until it was placed into service. However, as noted above, when interpreting tax exemption statutes, we cannot make assumptions. See Petco Insulation Co. v. Crystal, supra,231 Conn. 320.
Turning to § 12-81 (51) and (52), we see that these exemptions are designed to assist taxpayers who acquire structures and equipment for the reduction, control or elimination of water pollution and air pollution. Both subdivisions requires a taxpayer to do two things: first, the taxpayer seeking an exemption under (51) or (52) must obtain a CT Page 12674 certificate of approval from the DEP for the use of the equipment or structure to reduce, control or eliminate pollution. Second, once the certificate has been received, the taxpayer must claim the exemption by filing the certification from the DEP with the town's assessor on or before the first day of November in the assessment year.
Subdivisions (51) and (52) do not grant a taxpayer an exemption merely for purchasing equipment for the reduction, control or elimination of pollution, but rather exempts structures and equipment which have been certified by the DEP. Under the plain language of the statute, such equipment would be taxable until the taxpayer obtains the certification from DEP and files that certification with the town's assessor on or before November 1st of the assessment year. Unless the taxpayer meets these prerequisites, the taxpayer has not complied with the specific provisions of § 12-81 (51) or (52) and would not therefore be entitled to an exemption from taxation pursuant to this statute. Both of these subdivisions contain explicit waiver provisions for the failure to file the claim for exemption accompanied by the DEP certification, and make no exceptions for equipment or structures that are not yet certified. As with the exemption provisions of subdivision (72), this court cannot add provisions to these subdivisions to make anti-pollution equipment exempt or nontaxable prior to the certification by the DEP or the filing of a claim for exemption.
Pfizer does not argue that the property at issue would not be taxable if these exemption provisions did not exist. However, Pfizer's arguments hinge on the assumption that the property is nontaxable until it has met certain criteria, and only then becomes taxable and subject to the requirement that a claim for exemption be filed or the exemption is waived. In these subdivisions, there is no requirement that prior to taxing the property, the town must show that the taxpayer could have filed for the exemptions but did not. Under the plain wording of these subdivisions, the town is entitled to tax the property unless the exemption claim is filed. There is no requirement that the town look into the taxpayer's reasons for not filing an exemption claim. Under the plain wording of the subdivisions, if an exemption is not claimed, even if it is based upon the taxpayer's claim that it could not meet the DEP certification requirements necessary to claim the exemption, then the property is taxable. As stated above, for this court to find that the property at issue is exempt during construction or prior to DEP CT Page 12675 certification, would be to add provisions to the subdivisions that just do not exist. While, as the plaintiff argues, the legislative intent behind the exemptions is to encourage companies to invest in manufacturing in Connecticut and to encourage companies to invest in anti-pollution devices, we cannot rewrite the language of the exemption provisions to further that policy. That is the function of the legislature. SeeLeo Fedus Sons Construction Co. v. Zoning Board of Appeals, supra, 225 Conn. 442.
Pfizer did not comply with the certification requirements and filing requirements of § 12-81 (51), (52) or (72) in order to be entitled to an exemption from property taxes. Pfizer is therefore not entitled to the tax exemptions under those subdivisions on the October 1, 1995 grand list.[4]
Accordingly, we conclude that the personal property comprising the OSP and the WWTF should have been listed on its declaration of personal property subject to taxation on the grand list of October 1, 1995. Groton properly issued the supplemental assessment on the property adding it to the October 1, 1995 grand list.
Groton's motions for partial summary judgment in all three cases are granted. Pfizer's motions for partial summary judgment in all three cases are denied.
Arnold W. Aronson Judge Trial Referee