PETCO INSULATION COMPANY, INC. *v.* ALLAN A. CRYSTAL, COMMISSIONER OF REVENUE SERVICES

AAIS CORPORATION *v.* ALLAN A. CRYSTAL, COMMISSIONER OF REVENUE SERVICES
(14978)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued September 29—decision released November 15, 1994

*Robert J. Percy,* for the appellant (plaintiff AAIS Corporation).

*Anne O'Leary,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

KATZ, J. The principal issue in this appeal is whether the trial court correctly interpreted the term "services" in General Statutes § 12-407 (2) (i) (I)[1] to exclude tangible personal property purchased and consumed by asbestos removal contractors. The statute exempts the

---

[1] General Statutes § 12-407 provides in pertinent part: "DEFINITIONS. Whenever used in this chapter [chapter 219, entitled 'Sales and Use Taxes']:

"(2) 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (I) services to industrial, commercial or income-producing real property, including but not limited to, such services as management, electrical, plumbing, painting and carpentry and excluding any such services rendered for the voluntary containing or removing of hazardous waste, provided income-producing property shall not include property used exclusively for residential purposes . . . ."

cost of "hazardous waste removal services" from sales and use tax, and the department of revenue services defines asbestos as a "hazardous waste." Department of Revenue Services Ruling 89-230 (November 21, 1989). Because we conclude that tangible personal property purchased and consumed by asbestos removal contractors is not services within the meaning of § 12-407 (2) (i) (I), we affirm the judgment of the trial court.

The record establishes the following undisputed facts. The plaintiff, AAIS Corporation,[2] is a contractor engaged in the business of providing asbestos abatement services. Asbestos includes any of several fibrous minerals that commonly were used as insulation until it was discovered that the inhalation of asbestos fibers may cause a variety of lung diseases, including cancer. Therefore, extensive precautions are taken in preparation for asbestos removal and in the actual removal process.[3]

---

[2] The plaintiff Petco Insulation Company, Inc., withdrew its appeal to this court. We refer, therefore, to AAIS Corporation as the plaintiff.

[3] Before engaging in asbestos removal, a contractor must file a plan with the department of environmental protection that meets all state and federal regulations for the protection of workers and the public from potential exposure to airborne asbestos fibers. Regs., Conn. State Agencies § 19a-332a-3; see generally General Statutes § 19a-332b. These regulations require the contractor to seal off the area where the asbestos is located with a layer of plastic and to filter all air passing from the area. Regs., Conn. State Agencies § 19a-332a-5. Before entering the sealed area, workers must remove their personal clothing and don full body protective suits and respirators. Upon leaving the sealed area, workers must remove the protective clothing and leave the used clothing at the work site. The clothing may not be reused. Workers must shower and wash their respirators before entering the dressing area. Regs., Conn. State Agencies § 19a-332a-6.

After completing the asbestos removal process, the workers must collect the asbestos and all contaminated materials, including their protective suits, filters, plastic and tape, and seal the items in containers for disposal at designated hazardous waste landfills. Regs., Conn. State Agencies §§ 19a-332a-7 through 19a-332a-9.

As a contractor engaged in asbestos removal services, the plaintiff must purchase disposable supplies and materials, including paper uniforms, filters, plastic covering, plastic bags, tape and other miscellaneous materials, that are used in the process. The cost of these materials accounts for approximately 10 to 15 percent of the amount paid for the service by the owner of the property. Because the industry assumed that tangible personal property used to remove asbestos was excluded from the sales and use tax pursuant to § 12-407 (2) (i) (I), none of the plaintiff's suppliers required it to pay sales tax on the purchase of these materials. The defendant, the commissioner of revenue services, determined, however, that tangible personal property purchased by contractors for use in the removal of asbestos is subject to sales and use tax and levied a deficiency assessment against the plaintiff pursuant to General Statutes § 12-415.[4] The plaintiff then petitioned the defendant for a hearing and reassessment under General Statutes § 12-418,[5] arguing that § 12-407 (2) (i) (I) exempts materials as well as labor from the sales and use tax. After the defendant found that it had assessed the deficiency properly and denied

[4] General Statutes § 12-415 provides in pertinent part: "DEFICIENCY ASSESSMENTS. (1) DEFICIENCY ASSESSMENTS. If the commissioner is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the state by any person, he may compute and assess the amount required to be paid upon the basis of the facts contained in the return or returns or upon the basis of any information within his possession or that may come into his possession. . . ."

[5] General Statutes § 12-418 provides in pertinent part: "REASSESSMENTS. (1) PETITION FOR REASSESSMENT. Any person against whom an assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within sixty days after service upon such person of notice thereof. . . .

"(2) ORAL HEARING. If a petition for reassessment is filed within the sixty-day period, the commissioner shall reconsider the assessment and, if the person has so requested in his petition, shall, in his discretion, grant the person an oral hearing and shall give him ten days' notice of the time and place of the hearing. . . ."

a hearing, the plaintiff appealed to the Superior Court pursuant to General Statutes § 12-422.[6] That court determined that the plaintiff had failed to sustain its burden of proof that the assessment had been erroneously levied and, accordingly, upheld the deficiency assessment. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.[7]

The plaintiff made two arguments to the trial court. First, it argued that the tangible personal property used to remove asbestos was resold by the plaintiff to the service recipients and therefore was not taxable to the plaintiff.[8] Because the plaintiff did not obtain a resale certificate and because it ultimately consumed the materials, the trial court found no merit in this argu-

[6] General Statutes § 12-422 provides in pertinent part: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court."

[7] A second issue raised by the plaintiff on appeal is whether the trial court properly determined that the plaintiff owed $42,884.75 plus interest in sales and use tax. According to the plaintiff, the parties stipulated to an amount owed of $36,688.71 plus interest. The stipulation of the parties does not include this dollar amount but refers instead to three exhibits that list concessions made by both parties regarding calculations included on numerous spread sheets. Because the parties no longer dispute this point, we accept the plaintiff's representation as to the stipulated amount and, therefore, we do not otherwise address this issue.

[8] The sales and use tax is collected by the retailer from the ultimate consumer. General Statutes § 12-408. If materials are purchased for resale, no sales or use tax is required to be collected at that time. The burden of proving the materials purchased are for resale is "upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale." General Statutes § 12-410 (1).

ment. The plaintiff has not raised it before this court and, therefore, we do not address it.[9]

In the alternative, the plaintiff argued that the meaning of "services" under § 12-407 (2) (i) (I); see footnote 1; includes both labor and tangible personal property. As the trial court reasoned, although the term "services" is not defined for the purposes of chapter 219 of the General Statutes, entitled "Sales and Use Taxes," the term is used repeatedly throughout § 12-407 (2), the definitional section, as well as General Statutes § 12-412, the exemption section. The court concluded that when the legislature intended to exempt both services and tangible personal property from the tax, it clearly indicated this intent by explicitly including both terms. The court reasoned, therefore, that if the legislature had intended to exempt both labor and materials used for asbestos abatement services, it would have specifically provided for that exemption as it had in other legislative enactments dealing with the sales and use tax. Accordingly, the trial court determined that the plaintiff had failed to sustain its burden of proof and upheld the defendant's deficiency assessment. We agree with the reasoning and conclusion of the trial court.

At the outset, we note the principles of statutory construction that govern the applicability of a tax exemption. "First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption."

---

[9] See *State* v. *Zarick*, 227 Conn. 207, 221, 630 A.2d 565, cert. denied, U.S. , 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993) (an appellant who fails to raise a claim on appeal abandons it); see also *State* v. *Tatum*, 219 Conn. 721, 742, 595 A.2d 322 (1991); see generally Practice Book § 4065.

*Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services,* 213 Conn. 365, 369, 567 A.2d 1218 (1990). Applying these principles to the present case, we conclude that the trial court properly determined that the plaintiff failed to sustain its burden of proving that the § 12-407 (2) (i) (I) exemption for "services" includes tangible personal property purchased and consumed by asbestos removal contractors.

Neither the plain wording of the statute nor the legislative intent supports the plaintiff's argument. It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. *Lauer* v. *Zoning Commission,* 220 Conn. 455, 459–60, 600 A.2d 310 (1991). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . ." Id., 460. After considering the language of the statute, both alone and in the context of chapter 219 of the General Statutes, as well as the underlying legislative purpose of the exemption, we conclude that the sales and use tax exemption for asbestos removal services under § 12-407 (2) (i) (I) does not include tangible personal property purchased and consumed by an asbestos removal contractor.

The plain language of §§ 12-407 and 12-412 makes clear that § 12-407 (2) (i) (I) does not include tangible personal property. First, § 12-407 (2)[10] distinguishes

---

[10] General Statutes § 12-407 (2) provides in pertinent part: " 'Sale' and 'selling' mean and include: (a) Any transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration; (b) any withdrawal, except a withdrawal pursuant to a transaction in foreign or interstate commerce, of tangible personal property from the place where it is located for delivery to a point in this state for the purpose of the transfer of title, exchange

between tangible personal property and services. Section 12-407 (2) (i), (k), (*l*) and (m) define certain services as sales for purposes of the sales and use tax. Much of the remainder of the statute relates to the sales or leasing of "tangible personal property." General Statutes § 12-407 (2) (a), (b), (c), (d), (f), (g) and (j). Therefore, according to the plain language of § 12-407 (2), services are differentiated from tangible personal property.

or barter, conditional or otherwise, in any manner or by any means whatsoever, of the property for a consideration; (c) the producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting, including but not limited to, computer programming, sign construction, photofinishing, duplicating and photocopying; (d) the furnishing and distributing of tangible personal property for a consideration by social clubs and fraternal organizations to their members or others; (e) the furnishing, preparing, or serving for a consideration of food, meals or drinks; (f) a transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price; (g) a transfer for a consideration of the title of tangible personal property which has been produced, fabricated or printed to the special order of the customer, or of any publication, including but not limited to, computer programming, sign construction, photofinishing, duplicating and photocopying; (h) a transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house or space in a campground for a period of thirty consecutive calendar days or less; (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (j) the leasing or rental of tangible personal property of any kind whatsoever, including but not limited to, motor vehicles, linen or towels, machinery or apparatus, office equipment and data processing equipment, provided for purposes of this subdivision and the application of sales and use tax to contracts of lease or rental of tangible personal property, the leasing or rental of any motion picture film by the owner or operator of a motion picture theater for purposes of display at such theater shall not constitute a sale within the meaning of this subsection; (k) the rendering of telecommunications service . . . subject to the provisions related to telecommunications service in accordance with section 12-407a; (*l*) the rendering of community antenna television service . . . (m) the rendering of transportation service . . . (n) the transfer for consideration of space or the right to use any space for the purpose of storage or mooring of any noncommercial vessel. Wherever in this chapter reference is made to the sale of tangible personal property or services, it shall be construed to include sales described in this subsection, except as may be specifically provided to the contrary."

Second, § 12-412 indicates that an exemption for services does not encompass an exemption for tangible personal property.[11] It is settled that statutes must be construed consistently with other relevant statutes because the legislature is presumed to have created a

---

[11] General Statutes § 12-412 provides in pertinent part: "EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale and the storage, use or other consumption in this state with respect to the following items:

"(1) THE UNITED STATES, THE STATE OR SUBDIVISIONS. Sales of *tangible personal property or services* to the United States, the state of Connecticut or any of the political subdivisions thereof, or its or their respective agencies.

"(2) FEDERAL EXEMPTIONS. Sales of *tangible personal property or services* which this state is prohibited from taxing under the constitution or laws of the United States.

"(3) CERTAIN UTILITIES. . . .

"(B) TELEPHONE AND CABLE TELEVISION SERVICE PRIOR TO JANUARY 1, 1990. The sale or furnishing of telephone service and community antenna television and cable service, provided the exemption for services described in this subparagraph shall not be applicable to any such service rendered on or after January 1, 1990. . . .

"(5) NONPROFIT CHARITABLE HOSPITALS. Sales of *tangible personal property or services* to and by nonprofit charitable hospitals in this state for the exclusive purposes of such institutions. . . .

"(8) CHARITABLE AND RELIGIOUS ORGANIZATIONS. Sales of *tangible personal property or services* to charitable and religious organizations. . . .

"(11) PERSONAL SERVICES. Professional, insurance or personal service transactions, except any such service transaction described in subsection (2) of section 12-407, which involve sales as inconsequential elements for which no separate charges are made. . . .

"(21) PERSONAL PROPERTY FOR INCORPORATION INTO OR USED IN WASTE TREATMENT FACILITIES. Sales of and the storage, use or other consumption of *tangible personal property* acquired for incorporation into or used and consumed in the operation of facilities for the treatment of industrial waste . . . .

"(22) PERSONAL PROPERTY INCORPORATED INTO OR CONSUMED IN AIR POLLUTION CONTROL FACILITIES. Sales of and the storage, use or other consumption of *tangible personal property or supplies* acquired for incorporation into or used and consumed in the operation of facilities . . . .

"(29) PERSONAL PROPERTY USED OR CONSUMED IN OPERATION OF HOUSING FACILITIES FOR LOW AND MODERATE INCOME FAMILIES AND PERSONS. Sales of and the storage, use or other consumption of *tangible personal property* acquired for incorporation into or used and consumed in the opera-

coherent body of law. *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992). In construing a statute, the court may look to other statutes relating to the same subject matter for guidance. *Vecca* v. *State*, 29 Conn. App. 559, 564, 616 A.2d 823 (1992). Exemptions under § 12-412 (21), (22), (29), (55), (68), (73) and (76) relate only to the sale of various tangible personal property.

---

tion of housing facilities for low and moderate income families and persons, provided such facilities are constructed under the sponsorship of and owned or operated by nonprofit housing organizations. . . .

"(35) CENTERS OF SERVICE FOR ELDERLY PERSONS. Sales of *tangible personal property or services* to any center of service for elderly persons as described in subdivision (d) of section 17a-310. . . .

"(36) MOTOR VEHICLE DRIVING SERVICE PERFORMED OUT OF STATE. The sale of any motor vehicle driving *service* to the extent of that proportionate part of gross receipts from such service rendered which is directly related to actual driving performance outside the state. . . .

"(41) SERVICES TO DETERMINE EFFECT ON HUMAN HEALTH OF CONSUMPTION OR USE OF A PRODUCT OR SUBSTANCE. Sales of *services* used to determine the probable consequences in relation to human health of the consumption or other use of any product, substance or element. . . .

"(55) PERSONAL PROPERTY USED IN BURIAL OR CREMATION WITH VALUE UP TO TWO THOUSAND FIVE HUNDRED DOLLARS FOR ANY SINGLE FUNERAL. Sales of *tangible personal property* by any funeral establishment performing the primary services in preparation for and the conduct of burial or cremation, provided any such property must be used directly in the performance of such services and the total amount of such exempt sales with respect to any single funeral may not exceed two thousand five hundred dollars. . . .

"(58) SERVICES RELATED TO PERSONNEL, MANAGEMENT OR RESEARCH WHEN COMPANY RENDERING SERVICE AND RECIPIENT ARE PARTICIPATING IN A JOINT VENTURE FOR PURPOSES OF RESEARCH AND NEW PRODUCT DEVELOPMENT. . . .

"(62) SERVICES RENDERED BETWEEN PARENT COMPANIES AND WHOLLY-OWNED SUBSIDIARIES. . . .

"(73) COMPONENT PARTS FOR ASSEMBLY OF MANUFACTURING MACHINERY. . . .

"(74) CERTAIN SALES OF COMPUTER AND DATA PROCESSING SERVICES. Sales of computer and data processing *services* rendered by a retailer which, on or after July 1, 1991, acquired the operations of a data processing facility from the customer receiving such services, provided such customer operated the facility for its own use. . . .

"(76) AIRCRAFT REPAIR ON REPLACEMENT PARTS. On and after July 1, 1993, sales of and the storage, use or other consumption of repair or replace-

Section 12-412 (3) (B), (11), (36), (41), (58), (62), (74) and (77) exempt only services. Finally, § 12-412 (1), (2), (5), (8) and (35) specifically exempt both services and tangible personal property. Thus, when the legislature intended to exempt tangible personal property, services or both, it clearly provided for that specific exemption.[12] We assume the legislature recognized and intended the distinctions it incorporated in the provisions of §§ 12-407 (2) and 12-412. *Windham First Taxing District* v. *Windham,* 208 Conn. 543, 554, 546 A.2d 226 (1988). Therefore, the statutory differentiation between "services" and "tangible personal property" in these sections indicates that the legislature intended the definition of services to exclude tangible personal property for the purposes of sales and use tax exemptions.

The plaintiff contends that asbestos removal services are unique in that the materials a contractor introduces onto a removal site are used only once and, thereafter, they become part of the hazardous waste. The plaintiff argues that because the tangible personal property and the removal services are inseparable, both should be exempt from the sales and use tax. We are not persuaded. The sales and use tax statutes indicate that the term "services" does not include any tangible personal

ment parts exclusively for use in aircraft owned or leased by a certificated air carrier or in the significant overhauling or rebuilding of aircraft or aircraft parts or components on a factory basis.

"(77) AIRCRAFT REPAIR SERVICES. On or after July 1, 1993, sales of aircraft repair services when such services are rendered in connection with aircraft owned or leased by a certificated air carrier or with the significant overhauling or rebuilding of aircraft or aircraft parts or components on a factory basis. . . ." (Emphasis added.)

[12] The legislature also made this distinction in No. 84-507 of the 1984 Public Acts. The public act extended a sales tax exemption to renewable energy systems and the hazardous waste exemption in § 12-407 (2) (i) (I) was included as an amendment. The public act exempted both the installation service and component parts of solar and alternative energy systems from sales and use tax. In contrast, the amendment regarding hazardous waste removal exempted only services from the tax.

property, spare parts or equipment that may be used in the performance of a service. When an exemption is intended for both service and materials utilized in the act of providing that service, the legislature has explicitly included each component. See General Statutes §§ 12-407 and 12-412.

Further, as the trial court recognized, the purpose of the exemption lends little support to the plaintiff's position. The tax exemption for hazardous waste removal services was included in an amendment to No. 84-507 of the 1984 Public Acts offered by Representative Warren G. Sarasin. The purpose of the exemption was to provide an incentive to property owners to remove voluntarily and dispose of hazardous waste properly rather than to dump it illegally. 27 H.R. Proc., Pt. 17, 1984 Sess., pp. 6009–10, remarks of Representative Warren G. Sarasin. The intended beneficiaries of the exemption., therefore, are property owners and not asbestos removal contractors. The plaintiff argues that the added cost incurred due to the sales and use tax will be passed on to the owner and will act as a disincentive to voluntary removal, contrary to legislative intent. The property owners, however, remain tax exempt for between 85 and 90 percent of their total removal cost.[13] This substantial incentive to engage in the voluntary, legal disposal of hazardous waste furthers the legislative purpose of the exemption, and a sales and use tax on material purchased by the asbestos removal contractor does not defeat the tax advantage.

The plaintiff relies heavily on a statement made by Senator John B. Larson, when he moved to place the public act on the consent calendar, characterizing the exemption as one for "business services as well as tangible supplies . . . ." 27 S. Proc., Pt. 9, 1984 Sess.,

---

[13] The trial court found that the materials amount to only 10 to 15 percent of the total removal charge. This percentage is undisputed.

p. 3186. We are unpersuaded that this statement alone, which is contrary to the language of the amendment and to ample evidence that the legislature specifically distinguishes between services and tangible personal property, reflects a legislative intent to include personal property within the meaning of services. Indeed, when Representative Sarasin introduced the amendment, and testified regarding the purpose of the exemption, he described the exemption as extending to business services only. 27 H.R. Proc., Pt. 17, 1984 Sess., p. 6009. We find the specific language of the statute in combination with the testimony of Representative Sarasin regarding the purpose and scope of the amendment, to be more probative of legislative intent than Senator Larson's isolated remark.

Because the plaintiff has provided nothing more substantial than the comment of a single senator to defeat the plain statutory language or to show a contrary legislative purpose or intent, we conclude that the trial court properly found that the plaintiff has failed to sustain its burden of proof. We conclude, further, that for the purposes of the sales and use tax under § 12-407 (2) (i) (I), the term "services" does not include tangible personal property purchased and consumed by asbestos removal contractors.

The judgment is affirmed.

In this opinion the other justices concurred.