CONNECTICUT YANKEE ATOMIC POWER COMPANY
*v.* COMMISSIONER OF REVENUE SERVICES

NORTHEAST NUCLEAR ENERGY COMPANY *v.*
COMMISSIONER OF REVENUE SERVICES

Superior Court          Tax Session          File Nos. CV980492508S
                                                      CV980492509S

Memorandum filed April 27, 2000

*Day, Berry & Howard*, for the plaintiffs.

*Robert L. Klein*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. Connecticut Yankee Atomic Power Company and Northeast Nuclear Energy Company, the plaintiff in each case, appeal from the decisions of the defendant, the commissioner of revenue services (commissioner), that their engagement of vendors to dispose of radioactive waste was subject to the sales tax.

During the audit period from July 1, 1986, through June 30, 1989, each of the plaintiffs operated a nuclear fueled electric power generation plant in Connecticut. The operation of the power plants generated radioactive waste, such as used nuclear fuel, together with equipment, tools and materials that had become radioactive through exposure to sources of radiation at the plant. This radioactive waste was called "radwaste." To ensure that the radwaste was disposed of properly, the plaintiffs contracted with certain vendors for the containment, removal and disposal of the radwaste described by the parties as "radwaste disposal services." Both plaintiffs relied on General Statutes (Rev.

to 1985) § 12-407 (2) (i) (J),* the hazardous waste exclusion, as the basis for their nonpayment of a sales tax on the services purchased from the radwaste disposal services to contain, remove and dispose of radwaste.

During the audit period at issue, § 12-407 provided in relevant part: "(2) 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . [I] services to industrial, commercial or income-producing real property, including but not limited to such services as management, maintenance, janitorial, electrical, plumbing, painting, carpentry, landscaping and exterminating, and *excluding any such services rendered for the voluntary containing or removing of hazardous waste* . . . provided income-producing property shall not include property used exclusively for residential purposes . . . ." (Emphasis added.)

The issue raised by the parties is whether the radioactive radwaste, which the parties agree was both "hazardous" and "waste" within the ordinary, commonly understood meaning of those words, constituted "hazardous waste" within the meaning of § 12-407 (2) (i) (I), as in effect during the audit period.

Prior to 1984, waste removal services were generally considered to be a type of service to industrial, commercial or income producing real property that were subject to sales and use tax under § 12-407 (2) (i) (I). In 1984, the legislature excluded services rendered for the voluntary containing or removing of hazardous waste from the taxable category of services to industrial, commercial or income producing real property. Public Acts 1984, No. 84-507, § 2.

---

* Subsequently, subparagraph (J) of § 12-407 (2) (i) was redesignated as subparagraph (I). For purposes of this opinion it will be referred to as subparagraph (I).

The parties have stipulated that radwaste was "hazardous" and also "waste" within the ordinary, commonly understood and commonly approved meaning of those terms. The parties have also stipulated that radwaste did constitute "hazardous waste" as that term is specifically defined in General Statutes § 22a-448, as in effect during the audit period. The parties have further stipulated that radwaste did not constitute "hazardous waste" as that term was specifically defined in General Statutes § 22a-115, in effect during the audit period. Section 22a-115 provides in relevant part: "(1) 'Hazardous Waste' means any waste material, except by-product material, source material or special nuclear material, as defined in [General Statutes §] 22a-151, which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, transported, or otherwise managed . . . ." Section 22a-151 defines "special nuclear material" to mean "material as defined in Section 11aa of Public Law 85-256 (Act of September 2, 1957) and Public Law 89-645 (Act of October 13, 1966), as amended or as interpreted or modified by duly promulgated regulations of the United States Atomic Energy Commission pursuant thereto."

The plaintiffs contend that the term "hazardous waste" within the context of § 12-407 (2) (i) (I) included radioactive waste. The plaintiffs argue that since § 12-407 (2) (i) (I) did not define "hazardous waste," the term "hazardous waste" should be given its common meaning, such as the definition in the Random House Dictionary of the English Language (2d Ed. 1987): "[A]ny industrial by-product . . . that is destructive to the environment or dangerous to the health of people or animals."

The commissioner contends that the term "hazardous waste" in § 12-407 (2) (i) (I) had a very technical meaning that did not include radioactive waste. The reason

for this contention is that the commissioner argues that the court should incorporate into § 12-407 (2) (i) (I) the definition of hazardous waste contained in § 22a-115.

The plaintiffs claim that the hazardous waste exclusion in § 12-407 (2) (i) (I) is a tax imposition statute which must be construed in favor of the taxpayer. The Supreme Court, however, in *Petco Insulation Co.* v. *Crystal*, 231 Conn. 315, 320–21, 649 A.2d 790 (1994), construed this very same statutory provision as an exemption statute. In *Petco Insulation Co.*, the Supreme Court held that: " 'First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption.' " Id., quoting *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990). This court must, therefore, strictly construe the statute against the plaintiffs, and the plaintiffs bear the burden of showing that they were improperly assessed.

*Petco Insulation Co.* provides the road map to use in analyzing the positions in the present case. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation." (Citation omitted; internal quotation marks omitted.) *Petco Insulation Co.* v. *Crystal*, supra, 231 Conn. 321.

The statute at issue here, § 12-407 (2) (i) (I), is contained within title 12 of the General Statutes which

concerns taxation. The commissioner argues, however, that we should use the definition in § 22a-115 as a basis for interpreting the meaning of "hazardous waste" in § 12-407 (2) (i) (I). Environmental Protection, title 22a of the General Statutes, sets out the legislative policy to protect wetlands and watercourses (chapter 440), control pesticides (chapter 441), control noise pollution (chapter 442), protect the coastline through coastal management (chapter 444), protect harbors through harbor management commissions (chapter 444a), guard against hazardous waste (chapter 445), control nuclear energy (chapter 446), protect the environment against radiation and radioactive materials (chapter 446a), control air pollution (chapters 446b and 446c), and provide for solid waste management (chapter 446d).

The environmental protection policy of the legislature is set out in General Statutes § 22a-1: "[T]he policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state." As the Supreme Court in *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services*, 215 Conn. 292, 303, 576 A.2d 1259 (1990), noted: "The finding of the general assembly as articulated in [General Statutes] § 22a-114 forcefully attributes the contamination of the water, soil and air of the state, threatening the health and safety of Connecticut citizens, to hazardous wastes." The *Circuit-Wise, Inc.*, court also noted that the "[r]egulation of the management and disposal of hazardous waste is controlled by an intricate web of interrelated state and federal laws and regulations." Id., 299. To fund state efforts to control and protect the environment, the legislature enacted General Statutes § 22a-132 as a taxing statute to provide funds from generators of hazardous wastes to provide hazardous waste disposal facilities. Id., 304–305.

What one learns from a review of our state's environmental protection legislation is that protection of our state's natural resources and the enhancement of the health, safety and welfare of its citizens is paramount, and this court concludes that the exemption in § 12-407 (2) (i) (I) is in furtherance of this policy in protecting the environment. See *Petco Insulation Co.* v. *Crystal,* supra, 231 Conn. 326. This court agrees with the commissioner that there is a relationship between our environmental protection legislation and our taxing statutes. See *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services,* supra, 215 Conn. 299. The court, however, fails to see how the term "hazardous waste" in § 12-407 (2) (i) (I) can be construed to exclude radioactive waste when the definition in § 22a-115 is not specifically referenced in § 12-407 (2) (i) (I) as in effect during the audit period. This court is guided by the Supreme Court's analysis in *Petco Insulation Co.* that when the legislature intended to create an exemption in the taxing statutes, it clearly provided for that exemption. *Petco Insulation Co.* v. *Crystal,* supra, 325. If one follows the commissioner's line of reasoning, in order to find out the meaning of "hazardous waste" in § 12-407 (2) (i) (I), one would first have to go to § 22a-115 and construe whether "radwaste" meets that definition. This court finds it inconceivable that the legislature could put in an exception of "special nuclear material" in defining "hazardous waste" in § 22a-115, and fail specifically to construct the meaning of "hazardous waste" in § 12-407 (2) (i) (I) by that definition if the legislature intended to restrict the meaning of hazardous waste in that section to exclude nuclear waste.

"Where a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary

meaning." *Ziperstein* v. *Tax Commissioner*, 178 Conn. 493, 500, 423 A.2d 129 (1979). "It is a principle of statutory construction that a court must construe a statute as written . . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them." (Citations omitted; internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441, 623 A.2d 1007 (1993). "The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say . . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Citations omitted; internal quotation marks omitted.) Id., 441–42. Finally, "there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." (Internal quotation marks omitted.) *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 263, 541 A.2d 478 (1988). "In construing a statute, common sense must be used and we must assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) Id.

Where the legislature has simply used the term "hazardous waste" in a statute, without further definition, the term must be interpreted in its broadest sense. This court notes that in *Beelman Truck Co.* v. *Cosentino*, 253 Ill. App. 3d 420, 624 N.E.2d 454 (1993), the Illinois Appellate Court construed that state's Use Tax Act, which provided for an exemption for the use of facilities that prevent or reduce air and water pollution. In affirming a lower court's decision that the use of plastic linings in trucks to prevent leakage of contaminants during transportation was within the definition of the term "pollution control facility" as " 'any system, method, construction, device or appliance . . . sold or used or intended for the primary purpose of eliminating,

preventing, or reducing air and water pollution' "; id., 422; the court in *Beelman Truck Co.* stated that the intent of the legislature in creating the exemption was to encourage diverse means for reducing pollution, and that where the language in the statute is broad, it should be interpreted broadly to accomplish the legislative purpose of the act. Id., 423–24.[1]

The court concludes that the term "hazardous waste" in § 12-407 (2) (i) (I) as in effect during the audit period should be given its ordinary, commonly understood meaning. Therefore, the exemption in § 12-407 (2) (i) (I) includes radwaste.[2] The court is aware of the amendment to § 12-407 (2) (i) (I) in 1994 to exclude specifically

---

[1] Under the federal Resource Conservation and Recovery Act of 1976; 42 U.S.C. § 6901 et seq.; hazardous waste is defined as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903 (5). The court sees nothing in this definition to preclude radioactive waste from being included within the term "hazardous waste." Support for this construction of the federal Resource Conservation and Recovery Act of 1976 is found in the interpretation of this act by the Supreme Court of New Jersey. The term "hazardous waste" was construed by the Supreme Court of New Jersey to encompass nuclear waste within the meaning of "hazardous waste" in 42 U.S.C. § 6903 (5). *Philadelphia* v. *State Dept. of Environmental Protection,* 73 N.J. 562, 567, 376 A.2d 888 (1977), rev'd on other grounds, 437 U.S. 617, 98 S. Ct. 2531, 57 L. Ed. 2d 475 (1978).

[2] The commissioner also raises arguments regarding the plaintiffs' failure to pay or file tax returns under General Statutes § 22a-132, and the plaintiffs' right, under public utility laws, to recover taxes that they have paid in the rates they charge customers. The plaintiffs in these cases, however, have appealed the commissioner's assessments of sales and use taxes. Thus, the only issue before this court is whether the commissioner properly taxed the radwaste disposal services under the Sales and Use Tax Act. The court finds that the commissioner's arguments regarding the taxes under § 22a-132 and rates under the public utility laws are irrelevant to the issue of whether the radwaste disposal services were exempt from taxation under § 12-407 (2) (i) (I).

"services rendered in the voluntary evaluation, prevention, treatment, containment or removal of hazardous waste, *as defined in section 22a-115, or other contaminants of air, water or soil. . . ."* (Emphasis added.) Public Acts, Spec. Sess., May, 1994, No. 94-4, § 13. This amendment, however, occurred several years after the audit period at issue in these cases.

During the audit period, the plain common sense meaning of the words "hazardous waste" in § 12-407 (2) (i) (I) would include radwaste. Strictly construing a statute against a taxpayer does not require the court to apply a more restrictive definition contained in another title of the General Statutes, rather than the commonly understood meaning of the actual words used by the legislature in the statute at issue.

Accordingly, judgment may enter in favor of the plaintiffs. The commissioner is ordered to refund $145,829.14 paid by Connecticut Yankee Atomic Power Company and $616,548.28 paid by Northeast Nuclear Energy Company for the radwaste disposal services, with interest pursuant to General Statutes § 12-422.