[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Greenwich Hospital ("Greenwich"), filed this appeal from a decision of the defendant, Commissioner of Revenue Services ("Commissioner"), denying the plaintiff's request for a refund of a portion of the taxes it paid pursuant to the Connecticut Hospitals Tax, General Statutes § 12-263a et seq. for the period from January 1, 1996 to December 1, 1998. In February, 2000, the plaintiff filed a motion for partial summary judgment as to liability only. Both parties filed briefs, and the court heard oral argument on the plaintiff's motion. While the decision was pending, the legislature enacted Public Act 00-174. In August, 2000, the plaintiff filed an amended complaint, which added, in count two, a request for a declaration that Public Act 00-174 has no bearing on the issues in this case, and, in count three, a request for a declaration that the application of Public Act 00-174 in this case would violate numerous provisions of the United States and Connecticut constitutions. The Commissioner then filed a motion for partial summary judgment as to counts two and three of the plaintiff's amended complaint. The parties have filed several memoranda, and the court heard oral argument on the Commissioner's motion for partial summary judgment and further argument on the plaintiff's motion for partial summary judgment. The issue in this case is whether General Statutes § 12-263b, the gross earnings tax, which imposes a tax on "charges for all patient care services, excludes from taxation charges for items of personal property used in performing patient care services.
Greenwich is a nonprofit, charitable, nonstock corporation organized under the laws of the State of Connecticut, with its principal place of business located in Greenwich, Connecticut. In 1994, the State of Connecticut imposed a gross earnings tax ("GET") on the "amount of a hospital's total charges for all patient care services." General Statutes CT Page 10279 § 12-263a(2). Essentially, the GET is based upon the determination of the net revenue of the hospital. Net revenue is determined by making certain deductions from the total charges for all hospital patient care services.
Since 1994, Greenwich paid the GET. In March 1999, Greenwich filed with the Commissioner a request for a refund of a portion of the GET it had paid for the period of January 1, 1996 to December 31, 1998. Greenwich sought a refund for tax it claims it mistakenly paid on items of tangible personal property. Greenwich claims that it mistakenly calculated the GET amount due based on its total charges for both patient care services and tangible personal property. Greewich claims that the term "patient care services in General Statutes § 12-263a(2) referred only to personal services, and did not include charges to patients for the items of tangible personal property used in delivering the patient care services. After the Commissioner disallowed Greenwich's request for a refund and denied Greenwich's protest of the disallowance, Greenwich filed this appeal pursuant to General Statutes §§ 12-263e and 12-554.
Greenwich determined the amount of its charges for tangible personal property based upon information it gathered to meet the requirements of the federal government, for the purposes of cost containment in the Medicare reimbursement system. Greenwich is required to categorize and organize charges for patient care services according to "revenue codes" established by the federal government. Greenwich is required to submit to the Connecticut Office of Health Care Access reports describing each individual charge billed to patients and/or third party payers. This report is called a "Pricemaster" report. The Pricemaster report is a document that sets forth, line by line, a description of each individual charge billed by Greenwich to its patients and/or third party payors. The charges listed in the Pricemaster report are attributable to services such as room service, initial evaluations, therapy, surgery, emergency room physician services, etc., and for drugs, medical supplies such as sutures, bandages, plaster casts, clamps, disposable equipment and clothing, oxygen, anesthesia, hearing aids, etc. These charges are listed in the Pricemaster report for the purpose of Medicare reimbursement.
Since 1994, Greenwich calculated and paid the GET based on the total charges for both the actual services and the tangible personal property used in rendering the services. Greenwich contends that it mistakenly included the tangible personal property charges in the charges for patient care services in its calculation of gross revenue. For purposes of its refund claim, Greenwich utilized the line items in its Pricemaster report that were charges for tangible personal property to calculate the amount it allegedly overpaid. Greenwich claims that General Statutes § 12-263a(2) is clear on its face that charges for "patient care CT Page 10280 services" cannot be construed to also include charges made for items of personal property that are separately stated on the Pricemaster report.
There is a distinction in the type of taxes our legislature has sought to impose on hospitals. One type of tax imposed on hospitals and other taxpayers is the sales tax. General Statutes § 12-408 imposes a sales tax on all retail sales of tangible personal property or the rendering of services. Section 12-407 defines the types of tangible personal property and services which are subject to the sales tax. Patient care services are within the category of taxable services. General Statutes § 12-407
(29). In General Statutes (Rev. to 1999) § 12-407 (29), "patient care services was defined to mean "therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients including tangible property transferred incidental to such services. This definition of patient care services in the context of the sales tax was in existence since 1994. See Public Acts 1994, No. 94-9.
A second type of tax imposed on hospitals is the GET. General Statutes § 12-263a et seq. Pursuant to General Statutes § 12-263b, hospitals are taxed on their "gross earnings." "Gross earnings" is defined in § 12-263a(7) as "the amount of a hospital's net revenue minus (A) the amount that is projected to be received by the hospital from the federal government for Medicare patients, based on the hospital's budget authorization, and (B) the amount that is projected to be received by the hospital from the Department of Social Services, based on the hospital's budget authorization." "Net revenue" is the gross revenue minus "(A) contractual allowances, (B) the difference between government charges and government payments, (C) uncompensated care and (D) other allowances." General Statutes § 12-263a(6). As the title implies, the tax is imposed on all of the earnings of the hospital except for refunds. General Statutes § 12-263a(2). Whereas the sales and use tax is a tax of general application, the GET was enacted to specifically fund costs of those unable to pay for their patient care services. When we analyze the reason for the GET, those patients who could not afford to pay for patient care services as defined by Greenwich, could obviously not afford to pay for the items of tangible personal property associated with patient care services. In this case, it makes sense to consider the total cost, as defined in § 12-263a(2), rather than tax only personal services of health care providers and not include charges for the incidental property necessarily used to complete those services. Under this analysis we conclude that the term "total charges" as defined by the legislature in § 12-263a(2) is clear and unambiguous so as to include both personal services and preoperty when delivering patient care services. This reasoning was confirmed by the passage of Public Act 00-174.
The legislature repealed the GET for all quarterly periods commencing CT Page 10281 on or after April 1, 2000. Public Acts 2000, No. 00-170, § 9; General Statutes (Rev. to 2001) § 12-263b. During the same session that the legislature discontinued the GET, the legislature clarified the GET by enacting Public Act 00-174, which added a definition of "patient care services." General Statutes (Rev. to 2001) § 12-263b(8) provides: "Patient care services means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients, including tangible personal property transferred in connection with such services." Public Act 00-174 became effective May 26, 2000, and is applicable to all tax periods open on that date. Public Acts 2000, No. 00-174, § 83.
Greenwich contends that Public Act 00-174 was a substantive change in the gross earnings tax statute, and therefore cannot affect the substantive rights of Greenwich, which existed prior to the passage of Public Act 00-174. The Commissioner, on the other hand, contends that Public Act 00-174 was merely a clarification of previous legislative intent. Greenwich argues that Public Act 00-174 was substantive in nature because the clarification has no effect in the future due to the discontinuation of the GET as of April 1, 2000. Greenwich argues that the real purpose of the clarification was to foreclose the refund claims raised in the present case by interfering in the judicial process.
Greenwich claims that the term "services" is clear and unambiguous and that the distinction between "services" and "tangible personal property" has been longstanding and specifically recognized by the legislature in various statutory enactments. Many of these enactments deal with the taxation of and the exemption of various items of services and of personal property.[1]
Considering the legislative history and policy that was to be accomplished by § 12-263a et seq., the Commissioner points out that the gross earnings tax was passed as an "Emergency Certified Bill" in response to the ruling in New England Health Care Employees UnionDistrict 1199. SEIU AFL-CIO v. Mount Sinai Hospital, 846 F. Sup. 190
(D.Conn. 1994). The gross earnings tax statute was passed to provide revenue needed to cover the cost of providing hospital care to those who could not afford to pay for such care. See Public Acts 1994, No. 94-9; see also 37 S. Proc., Pt. 2, 1994 Sess., p. 640.
As noted in New England Health Care Union v. Mount Sinai Hospital,65 F.3d 1024, 1027 (2nd Cir. 1995), which overruled the district court in New England Health Care Emnlovees Union District 1199. SEIU AFL-CIOv. Mount Sinai Hospital, supra, 846 F. Sup. 190, American hospitals have been providing medical care to those who cannot afford it by overcharging those who can afford to pay. This practice was sanctioned in 1991 when Connecticut passed the Uncompensated Care Pool Act ("Act I"), codified in CT Page 10282 General Statutes § 19a-168 et seq. Act I allowed hospitals to tack a surcharge on patients' bills up to 30.7%. The state pooled this money in an "uncompensated care pool" administered by the Connecticut Commission on Hospitals and Health Care ("Commission"). The Commission returned this revenue to the hospitals to subsidize the cost of uncompensated or undercompensated care. "This pass-through qualified Connecticut for approximately $150 million in federal Medicaid matching funds annually, which the state used to balance its budget (rather than to provide additional Medicaid benefits)." New England Health Care Union v. MountSinai Hospital, supra, 65 F.3d 1027. Connecticut repealed Act I in view of the district's court ruling in New England Health Care, replacing it with Act II (Public Act 94-9), which contained many of the features of Act I. Id., 1028.
As a result of an obvious effort by the Department of Revenue Services to obtain clarification of the definition of "patient care services," our legislature enacted Public Act 00-174, which provides:
 Sec. 68. . . . As used in sections 12-263a to 12-263e, inclusive: . . . (8) "patient care services means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients, including tangible personal property transferred in connection with such services.
See General Statutes (Rev. to 2001) § 12-263a(8). In § 69 of Public Act 00-174, the legislature also amended the definition of patient care services in the sales tax statute, which made the wording of the definition in the sales tax statute consistent with the definition in § 68 of the public act. General Statutes (Rev. to 2001) § 12-407
(29) now provides: "`Patient care services' means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients including tangible personal property transferred incidental to such services."
The legislature's intent is expressed in Public Act 00-174, which states:
 Sec. 70. The intent of section 12-263a and subsection 29 of section 12-407 of the general statutes, as amended by sections 68 and 69 of this act is to clarify that current law includes in the base of the hospital gross earnings tax sales of tangible personal property transferred in connection with patient care services and that current law imposes sales tax on the sale of tangible personal property transferred in connection with patient care services. CT Page 10283
Section 83 of Public Act 00-174 provides that § 68 of the act "shall apply to all open tax periods."
In construing the meaning of a statute, "our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) Gauger v. Frankl, 252 Conn. 708, 710,752 A.2d 1077 (2000).
"An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." (Citations omitted; internal quotation marks omitted.) ConnecticutNational Bank v. Giacomi, 242 Conn. 17, 39-40, 699 A.2d 101 (1997). SeeAndersen Consulting, LLP v. Department of Revenue Services, 255 Conn. 498,767 A.2d 692 (2001). Even if a statute effects a substantive change in the law, it may be applied retroactively, if the legislature so deems it to be applied retroactively. Toise v. Rowe, 243 Conn. 623, 628, 707 A.2d 25
(1998).
The concept expressed by the legislature in creating the GET was to tax all of the revenue earned by the hospitals in delivering patient care services. In the delivery of patient care services, the use of sutures, needles, bandages, medication and a myriad of other items is necessary. Patient care services cannot be delivered successfully without the incidental use of what Greenwich refers to as tangible personal property. Even before the legislative clarification to General Statutes § 12-263a, we would not so narrowly construe the language of the GET to separate patient care services from those items of personal property that are necessary for the completion of the delivery of patient care services. The reporting requirements of Medicare does not provide a basis for injecting into the interpretation of the language of the GET a requirement that gross revenue earned by a hospital excludes charges for personal property furnished to a patient incidental to the delivery of patient care services to that patient. Common sense cannot be disregarded when construing the intent of the legislature. Gazo v. City of Stamford,255 Conn. 245, 266, 765 A.2d 505 (2001).
It is generally accepted that when one refers to treatment by a hospital, doctor, or other medical provider, the treatment is considered CT Page 10284 to be a service, not a sale of personal property. It is commonly considered that when a hospital treats a patient, the hospital is entitled to compensation for its "services." See Porter v. McPherson,198 W. Va. 158, 479 S.E.2d 668 (1996); 40A Am.Jur.2d, Hospitals and Asylums, § 8; see also General Statutes § 19a-280 (furnishing of blood, blood plasma and components is a service).
Greenwich claims that Petco Insulation Co. v. Crystal, 231 Conn. 315,649 A.2d 790 (1994), supports its argument that services cannot include tangible personal property unless the legislature specifically provides for its inclusion. In Petco, an asbestos removal contractor claimed that certain disposable supplies and materials, such as paper uniforms, filters, plastic covering, plastic bags, tape and other material, were necessary to carry out the work of removing the asbestos. The issue as stated in Petco was "whether the . . . term "services' in General Statutes § 12-407 (2)(i)(I) . . . exclude[d] tangible personal property purchased and consumed by the asbestos removal contractors. The statute exempts the cost of "hazardous waste removal services' from sales and use tax, and the department of revenue services defines asbestos as a `hazardous waste.'" Id., 316-17. The court in Petco concluded that "tangible personal property purchased and consumed by asbestos removal contractors is not services within the meaning of § 12-407
(2)(i)(I)." Id., 317. The Petco court found that" when the legislature intended to exempt tangible personal property, services or both, it clearly provided for that specific exemption. We assume the legislature recognized and intended the distinctions it incorporated in the provisions of §§ 12-407 (2) and 12-412 . . . Therefore, the statutory differentiation between "services' and "tangible personal property' in these sections indicates that the legislature intended the definition of services to exclude tangible personal property for the purposes of sales and use tax exemptions." (Citations omitted; internal quotation marks omitted.) Id., 325. The tangible personal property purchased by the asbestos removal contractor and consumed in providing the service to the property owner was not exempt from the sales and use tax. In other words, the supplies and material purchased by the contractor were taxable as a sale, but the contractor's service to the property owner was exempt from taxation. Id.
Although Greenwich frames the issue is this case to be one of not taxing tangible personal property, the legislative concept, as expressed in § 12-263b, is focused on taxing income. There is a significant difference in the concept of taxing income derived from charges for delivering patient care services, and imposing a sales tax on the value of specific items such as personal services or tangible personal property. The difference between an income tax, such as the GET, and a property tax was clearly set out in People of State of New York ex rel.CT Page 10285Cohn v. Graves, 300 U.S. 308, 81 L.Ed 666, 57 S.Ct. 466, (1937). "The incidence of a tax on income differs from that of a tax on property. Neither tax is dependent upon the possession by the taxpayer of the subject of the other. His income may be taxed, although he owns no property, and his property may be taxed, although it produces no income. The two taxes are measured by different standards, the one by the amount of income received over a period of time, the other by the value of the property at the particular date." Id., 314. In the present case, the tax is based on the charge the hospital makes to its patients for services rendered to the patients. The tax is not based on the value of the services performed or the cost of the items necessary to carry out the performance of the service. Whether or not the value of the itemized bandages, sutures, needles, tubes, protective clothing, medication and the like are used in performing the service to the patient, the basis for the GET is still the charge made to the patient. The GET is a revenue generating statute designed to pass on the cost to the state for providing free hospital care for indigent patients to patients who can afford to pay for these services. Section 12-263b recites that it is a gross revenue tax. The tax is imposed on what hospitals produce in the way of revenue, and that comes from patient care services, which necessarily include items of personal property.
Greenwich additionally argues that Public Act 00-174 is an interference by the legislature in the judicial process and that the act is one of substance and therefore cannot operate retroactively. "[i]n deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will consider if the actions constitute: (1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch." (Citations omitted; internal quotation marks omitted.) Seymour v. ElectionsEnforcement Commission, 255 Conn. 78, 107, 762 A.2d 880 (2000). Neither of these conditions exist in the present action. We see nothing improper in the legislature declaring the intent of its own legislation where a court is in the process of placing its own interpretation upon a legislative enactment. The legislature created the hospital GET, and it sought to clarify what it meant in creating that tax. It is not interference by the legislature to prevent a court from determining legislative intent simply by stating what it meant in prior legislation. The legislature has plenary authority to enact laws, and courts must be deferential to statutory changes that clarify existing laws. Id., 629.
Our analysis of this case leads us to the conclusion that the term "patient care services in section 12-263a is not ambiguous and that it was the intent of the legislature to include, in taxing hospital charges for "patient care services," the attendant items of personal property that are CT Page 10286 necessary for the hospital to complete its delivery of patient care services. For these reasons, the plaintiff's motion for partial summary judgment as to liability only is denied. The Commissioner's motion for partial summary judgment as to counts two and three is granted. A status conference will be scheduled to determine if there are any further issues to be resolved regarding the plaintiff's appeal from the Commissioner's denial of its refund request.
Arnold W. Aronson Judge Trial Referee